UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

In re:

ERIC FRANCIS LONG and LARISSA
SAPEGIN LONG,

    Debtors.

ERIC FRANCIS LONG and LARISSA
SAPEGIN LONG
    Plaintiffs,

vs.

MORTGAGE SOLUTIONS OF
COLORADO, LLC, DBA MORTGAGE
SOLUTIONS FINANCIAL

    Defendant.

Case No. 25-40809-BRW

Chapter 7

Adv. No. 26-08002-BRW

**MEMORANDUM DECISION**

Appearances:

    Eric Francis Long, Twin Falls, Idaho, Plaintiff pro se.

    Larissa Sapegin Long, Twin Falls, Idaho, Plaintiff pro se.

    Jesse Baker, Aldrige Pite, LLP, San Diego, California, counsel for Defendant.

    Defendant Mortgage Solutions of Colorado, LLC, dba Mortgage Solutions Financial

("Defendant")[1] filed its "Motion for Discretionary Abstention or Alternatively to Dismiss the

Complaint," (Doc. No. 11) on April 22, 2026, and subsequently amended it on May 13, 2026

---

[1] Reference to "Defendant" includes both Defendant and its Servicer, MSF Servicing, a division of Mortgage Solutions of Colorado, LLC.

MEMORANDUM DECISION - 1

(Doc. No. 15) (collectively, the "Motion").[2]  The Motion seeks dismissal of the Complaint (Doc. No. 1) (the "Complaint") filed by pro se chapter 7 debtors Eric Francis Long and Larissa Sapegin Long ("Plaintiffs"), through this Court's exercise of discretionary abstention under 28 U.S.C. § 1334(c)(1), or alternatively for failure to state a claim upon which relief may be granted and violation of Federal Rule of Civil Procedure 8.[3]  Plaintiffs filed an Opposition to Defendant's Motion (Doc. No. 12) on April 29, 2026, to which Defendant filed a Reply (Doc. No. 16) on May 13, 2026.

On May 20, 2026, the Court held a telephonic hearing on the Motion and took the matter under advisement.  After considering the Complaint, the applicable law, and arguments of the parties, the following is the Court's decision on the Motion.  Rule 7052.

## I. SUBJECT MATTER JURISDICTION, AUTHORITY, AND VENUE

This Court has subject matter jurisdiction over this adversary proceeding as referred to it by the district court pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  This adversary proceeding involves "related to" claims despite the general "core" designation found at 28 U.S.C. § 157(b)(2)(A) and (O).  *See Certain Underwriters at Lloyds v. GACN, Inc. (GACN, Inc.)*, 555 B.R. 684, 694-98 (9th Cir. BAP 2016) (collecting and analyzing Ninth Circuit case authority and concluding that a declaratory relief claim commenced as an adversary by the debtor as to a prepetition contact, which was governed by state law, is not a "core" proceeding).  However, ruling on an abstention motion is a "core" proceeding within the Court's constitutional authority

---

[2] Defendant filed the amended motion to correct an error in including paragraph II, C in the original motion to correct Defendant's prior assertion that Plaintiffs had filed bankruptcy previously. Otherwise, the substance of the original motion remains the same.

[3] Hereinafter, unless otherwise indicated, all statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all citations to a "Rule" are to the Federal Rules of Bankruptcy Procedure.  All citations to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM DECISION - 2

to determine via final order.  *See In re SCS Logistics, Inc.*, 671 B.R. 224, 234 (Bankr. S.D. Ohio 2025) (stating that abstention is a core proceeding because it involves a matter concerning the administration of the estate) (citations omitted).  Finally, venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. RELEVANT FACTS

### A.  Procedural Background

Plaintiffs filed their chapter 7 bankruptcy case on December 1, 2025.  Since filing, they have advanced several different motions and requests, most of which have the same goal: to prevent the foreclosure of a deed of trust on their residence based on allegedly inaccurate and inconsistent accounting of payments under the loan since June of 2024.  This adversary proceeding, filed on March 23, 2026, is a culmination of these issues.

On March 23, 2026, Plaintiffs filed this adversary proceeding, seeking declaratory relief, accounting, and injunctive relief.  Doc. No. 1.  In addition to requesting injunctive relief in the Complaint, Plaintiffs also filed a separate Motion for Injunctive Relief Pursuant to 11 U.S.C. § 105(a) seeking to "[e]njoin Defendant from proceeding with foreclosure pending resolution of the adversary proceeding."  Doc. No. 6 at 3.  On April 10, 2026, after not receiving a response by the Defendant, Plaintiffs filed a "Notice of Non-Opposition" to their motion.  Doc. No. 9.

Defendant then filed a response to the Motion for Injunctive Relief on April 15, 2026, asserting that Plaintiffs' motion is moot and should be denied because the automatic stay prevents Defendant from proceeding with foreclosure.  Doc. No. 10.

Subsequently, Defendant filed the Motion.  As indicated above, the Motion seeks dismissal of the Complaint either through the Court's exercise of discretionary abstention under 28 U.S.C. § 1334(c)(1), or in the alternative for failure to state a claim and violation of Civil

MEMORANDUM DECISION - 3

Rule 8.  Doc. No. 11.

In response, Plaintiffs filed an Opposition to the Motion insisting that this adversary proceeding concerning the validity and amount of Defendant's asserted arrearage is central to the bankruptcy case and abstention is not warranted because it is closely related to the bankruptcy, not purely a state law dispute, and such abstention would result in inefficiency and delay.  Doc. No. 12.  Further, Plaintiffs counter that the Complaint contains sufficiently detailed factual allegations to comply with Rule 8 and the *Iqbal*/*Twombly* standards.  *Id.*

Subsequently, Defendant filed a Reply to Plaintiffs' opposition addressing the error in the original motion and providing a reinstatement amount of $33,170.06 to be paid on or before May 29, 2026, with the hope of resolving the matter without further litigation.  Doc. No. 16.

**B.  Factual Allegations as Stated in the Complaint**

Prior to filing this bankruptcy, on July 30, 2021, Plaintiffs executed a note and deed of trust with Defendant obtaining a $329,650 mortgage loan secured by Plaintiffs' residence at 1237 Knoll Ridge Rd, Twin Falls, Idaho.  Doc. No. 1 ¶¶ 6-8, Ex. A.  In June of 2024, Defendant transitioned the servicing of the loan to a new platform.  Doc. No. 1 ¶ 19.  During this time, on June 24, 2024, Defendant notified Plaintiffs that a temporary servicing website would be used while the new, permanent system was implemented.  *Id.* ¶ 22, Ex. D.  However, Plaintiffs' online access to their account was terminated, limiting their access to their account.  *Id.* ¶ 20, Ex. B. Plaintiffs were never able to access their account from either the temporary system or the new servicing website.  *Id.* ¶ 24.

After this servicing transition, Plaintiffs noticed discrepancies between their personal payment records and Defendant's mortgage statements.  *Id.* ¶ 25.  On August 1, 2024, Plaintiffs emailed Defendant to report and correct the discrepancies.  *Id.* ¶ 26, Ex. E at 2.  Plaintiffs sent a

MEMORANDUM DECISION - 4

follow up email to Defendant on August 13, 2024.  *Id.*  Defendant responded that same day, August 13, 2024,[4] stating that the matter was "currently under review." *Id.* at Ex. E at 1.

Plaintiffs continued to submit multiple written Notices of Error to Defendant regarding the inaccuracies in their loan including missed and misapplied payments and inaccurate account balances.  Doc. No. 1 ¶¶ 43, 117.  On October 4, 2024, Defendant sent Plaintiffs a letter indicating they had received their October 1, 2024, inquiry regarding their mortgage loan, were researching their account, and would respond "within thirty (30) business days of receiving your inquiry or as required by applicable state law."  *Id.* at Ex. G.  On November 11, 2024, Defendant followed up on their previous letter and advised that they have not completed their investigation and would need an additional 15 days to respond.  *Id.* at Ex. H.  Plaintiffs finally received the outcome of the review on January 3, 2025.  *Id.* at Ex. I.  Such correspondence indicated that "the total amount needed to make the October, November, and December 2024 payments, including NSF fees, is $4,196.95."  *Id.* at Ex. I at 2.  The correspondence otherwise failed to provide a complete and accurate response addressing the identified errors or a reconciled accounting.  *Id.* ¶¶ 118, 119.

Also in January of 2025, Plaintiff Larissa Long contacted Defendant by phone regarding the account balance. *Id.* ¶ 48.  Defendant's representative indicated that there were extra payments credited to the account and as a result the January payment was not necessary.  *Id.* ¶¶ 49, 50, Ex. F. Plaintiffs relied on these representations.  *Id.* ¶ 52, Ex. F.

At some point, Plaintiffs pursued qualification for a loan modification.  On February 13, 2025, Plaintiffs received confirmation that Defendant received their complete financial package

---

[4] The Complaint states that Defendant acknowledged that the payment records did not match in this email on August 14, 2024.  Doc. No. 1 ¶ 27.  However, the provided Exhibit lists the date as August 13, 2024.

MEMORANDUM DECISION - 5

and would review to determine their qualification status.  *Id.* at Ex. J.  Less than a month later, on March 5, 2025, Plaintiffs received a loan modification proposal to prevent foreclosure.  *Id.* at Ex. K.

On July 28, 2025, Defendant's trustee, Brigham Lundberg at Halliday, Watkins, & Mann, P.C., sent a Default Demand Letter to Plaintiffs indicating a payment of $15,802.00 by August 27, 2025, was necessary to cure the current delinquency.  *Id.* ¶ 54, Ex. L.  The Default Demand Letter further stated that if the full amount of the default was not received by August 27, 2025, they "shall accelerate the entire sum of both principal and interest due and payable, and invoke any remedies provided for in the Note and the Deed of Trust, including but not limited to the foreclosure sale of the property." *Id.*   However, the cure amount did not account for payments made or other amounts previously asserted by Defendant.  *Id.* ¶¶ 55, 56.

Plaintiff Larissa Long attempted to make the demanded payment by telephone on August 26, 2025, but Defendant refused to accept the payment through its normal servicing channel.  *Id.* ¶¶ 60, 61.  Instead, Plaintiffs obtained and mailed a cashier's check in the amount of $15,802.00 on August 28, 2025, and notified Defendant's Servicer of the mailed payment made in protest via email.  *Id.* ¶¶ 62, 64, Ex. M at 2, Ex. N.[5]  Defendant received the check on September 11, 2025, and on September 15, 2025, rejected the check stating that they were unable to process the check due to "[a]ctive foreclosure, unable to accept less than full reinstatme[nt]." *Id.* ¶¶ 66-69, Ex. O at 2.  Defendant did not otherwise explain why the $15,802 in the Default Demand Letter was no longer sufficient nor did they allow Plaintiffs' attempt to cure through the typical servicing channels or certified funds.  *Id.* ¶¶ 70, 71.  Prior to receiving the check, on September 5, 2025, Defendant's Trustee issued a Notice of Default, notifying Plaintiffs of Defendant's

---

[5] However, the Cashier's Check indicates a date of "08/29/2025." Doc. No. 1 at Ex. N.

MEMORANDUM DECISION - 6

election to sell the property and foreclose under Idaho Code § 45-1505.  *Id.* at Ex. R.

On November 14, 2025, Defendant's Trustee provided Notice of Trustee's Sale to take place on March 25, 2026, due to Plaintiffs' default by failing to make their monthly payments beginning December 1, 2024.  *Id.* at Ex. P.  On that same date, Defendant's Trustee provided further notice indicating Plaintiffs had not fulfilled their obligations under their loan, and under Idaho law, the property could be sold to satisfy the obligation.  *Id.* at Ex. Q at 1.  This notice also provided that payment of $22,970.13 was needed as of December 3, 2025, to bring the loan current and if they could not afford their loan payments they could apply for loan modification.  *Id.*

Throughout this time, Plaintiffs were unable to determine the amount owed on the loan due to inconsistencies between the monthly statements, communications from Defendant's servicer and Trustee, and Plaintiffs' own records.  This includes "payments being returned, placed into suspense, or not credited despite acknowledge receipt of payment activity," "payments that were applied, reversed, and reapplied in identical or offsetting amounts without explanation, including repeated entries for 'escrow advance' and 'escrow advance refund,'" and mortgage statements where the explanation of amounts due did not add up to the total amount due.  *Id*. ¶¶ 74, 83, 88, 89. The mortgage statements from December 2024, the date identified by Defendant as the time of default, demonstrate such credited and reversed entries.  *Id.* ¶ 84.  At one point in time, on the mortgage statement dated September 3, 2024, there was a partial payment/unapplied balance of $9,958.81 which Defendant did not apply to the loan in contravention of the Deed of Trust, which requires payments received to be applied to principal and interest and allows reinstatement of the loan upon payment of the cure amount.  *Id.* ¶¶ 95-98.

Plaintiffs have suffered damages in the costs incurred in attempting to obtain accurate

MEMORANDUM DECISION - 7

information, emotional distress, and the threat of wrongful foreclosure. *Id.* ¶ 121.

Plaintiffs filed the underlying bankruptcy on December 1, 2025, and subsequently this adversary proceeding on March 23, 20226, with many of the above-mentioned issues persisting.

### III. APPLICABLE LAW & ANALYSIS

#### A. Discretionary Abstention under § 1334(c)(1)

Under 28 U.S.C. § 1334(c), a bankruptcy court may abstain from hearing certain matters it otherwise has jurisdiction to hear. This can take the form of mandatory abstention or permissive abstention.

Defendant seeks discretionary abstention under 28 U.S.C. § 1334(c)(1). That statute provides:

> nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or with respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to cases under title 11.

28 U.S.C. § 1334(c)(1).

In determining whether to exercise this discretion, the Ninth Circuit has established twelve (12) factors for consideration:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties,

MEMORANDUM DECISION - 8

(11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Christensen v. Tucson Estates., Inc. (In re Tucson Estates., Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990).

The Court will consider each of these in turn.

### 1. The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention

In this case, abstaining would not influence the administration of the estate. Principally, Plaintiffs seek determination as to the amount owing on their mortgage, claiming that there are discrepancies and errors in the Defendant's accounting precipitating their attempt at foreclosure. However, such discrepancies are not of consequence to the bankruptcy estate.

First, the Defendant has not filed a proof of claim.[6] Generally, the filing of a proof of claim is required to deem that interest as allowed against the assets of the bankruptcy estate. 4 COLLIER ON BANKRUPTCY ¶ 501.01[2][a] (Richard Levin & Henry J. Sommers eds., 16th ed.).

However, a secured creditor need not file a proof of claim. *Bisch v. United States (In re Bisch)*, 159 B.R. 546, 549 (9th Cir. BAP 1993). While "[f]ailure to file a secured proof of claim in a bankruptcy case might mean that the lienholder will not receive a distribution from the estate," it alone does not invalidate the lien. *Id.* Instead, the secured creditor's lien, and right to foreclose, "survives or passes through the bankruptcy." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). Moreover, the discharge does not affect a creditor's in rem rights, but only the debtor's personal liability. *Reed v. Nielsen (In re Reed)*, 640 B.R. 932, 938-39 (9th Cir. BAP 2022).

---

[6] The Court previously overruled the Plaintiff-Debtors' objection to Defendant-Creditor's claim in the underlying bankruptcy for lack of a filed proof of claim. *In re Long,* 25-40809-BRW, at Doc. No. 63. References to the underlying bankruptcy docket will be designated as "BK Doc."

MEMORANDUM DECISION - 9

Given that the creditor has not filed a proof of claim, the creditor is not entitled to receive distributions from the estate and thus the amount owing to that creditor is not necessary for this Court to determine.  Once the bankruptcy case concludes, the creditor may enforce its lien through the applicable nonbankruptcy law and the debtor may defend against such action.

The Court acknowledges that there are scenarios in which the exact amount due on the mortgage would affect the administration of the estate.  One such instance includes where the trustee seeks to sell the property for the benefit of the estate.  In that instance, a determination of the outstanding balance would be necessary to ensure proper distributions are made to the secured creditor, the debtors under their claimed homestead exemption, and the bankruptcy estate for unsecured creditors.  However, as confirmed by Plaintiffs at the May 20, 2026, hearing, no such sale is contemplated here.[7]

Another scenario includes chapter 13 cases where the mortgage and any arrearage are paid through the plan.  In this scenario, the exact arrearage amount is necessary so that it can be sufficiently and accurately cured through the required monthly plan payments.  Even here, a creditor must have an allowed claim to receive such distribution from the estate under the confirmed plan.  4 COLLIER ON BANKRUPTCY ¶ 501.01[2][b] (Richard Levin & Henry J. Sommers eds., 16th ed.).  As such, any dispute as to the claims of a creditor to be paid through the plan affects the administration of the bankruptcy estate.

---

[7] While not making any findings on the issue, the Court notes that any such sale would likely not affect the estate given that there is apparently no equity in Plaintiffs' real property, or "value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *In re Polla*, 2015 WL 3745294, at *2 n.9, *2 (Bankr. D. Idaho 2015); *see id.* (stating that a chapter 7 debtor's objection to relief from the stay is extremely suspect where there is no equity for the estate in excess of the liens and a debtor's homestead exemption) (citation and quotation marks omitted); *see also* BK Doc. No. 1 at 11 (listing the value of the real property of $392,000 in Plaintiffs' schedules); *Id.* at 29 (claiming the equity in the real property as exempt in the amount of $84,000); *Id.* at 30 (stating the secured debt on the real property totals $308,000); BK Doc. No. 16 at ¶ 6 (creditor claim of amount due under the note secured by the real property of $323,784.40 as of the date of the motion).

MEMORANDUM DECISION - 10

At the May 20, 2026, hearing, Plaintiffs cited to *Neria v. Wells Fargo (In re Neria)*, 2022 WL 17254478 (Bankr. N.D. Tex. Nov. 28, 2022) for the assertion that bankruptcy courts have jurisdiction to adjudicate servicer disputes even where no proof of claim is filed because the underlying servicing causes of action are intertwined.  However, such a reading is not entirely accurate; the court in that case did not discuss the propriety of hearing disputes where no proof of claim was filed.  While the court in *Neria* did hear and address disputes between the debtor and the mortgage servicer, a proof of claim of a defendant[8] had been filed and intertwined with all causes of action.[9]  *Id.* at *1 n.3.  Additionally, *Neria* was a chapter 13 case rather than chapter 7 case, affecting the type of treatment the mortgage servicer received.  As discussed, in this chapter 7 case, the issues raised by Plaintiffs do not have an effect on the bankruptcy estate and are merely between Plaintiffs and Defendant.  This factor favors abstention.

### 2.   The extent to which state law issues predominate over bankruptcy issues

Plaintiffs' adversary complaint lists various causes of action and requests for relief.  Doc. No. 1.  The Complaint asserts five claims for relief: judicial accounting, breach of contract, declaratory relief by determining the correct amount of arrears, injunctive relief under 11 U.S.C. § 105 and Rule 7065, and violation of RESPA 12 U.S.C. § 2605.  *Id.*

While the Plaintiffs' claims facially implicate bankruptcy law, at the heart of the Complaint are state law issues.

First, Plaintiffs seek an injunction pursuant to § 105(a) to prevent a foreclosure of their home due to the alleged inconsistent and inaccurate accounting.  As previously addressed in the

---

[8] Although it is true that Wells Fargo did not file a proof of claim on its own behalf, Wilmington Trust, the entity for which Wells Fargo acted as servicer, did file a proof of claim.  *Id.* at *5.

[9] Many of the instances of alleged mortgage servicer misconduct in *Neria* took place post-petition, further blending the issues with the bankruptcy.  *See In re Neria*, 2022 WL 17254478.

MEMORANDUM DECISION - 11

underlying bankruptcy on the record at a hearing on the Plaintiffs' Motion for Temporary

Injunction on February 27, 2026, (BK Doc. No. 42), and in a footnote of the Court's Order

Granting Debtors' Second Motion to Defer Entry of Discharge (BK Doc. No. 64) entered on

April 30, 2026, an injunction is unnecessary by virtue of the already imposed automatic stay,

which currently prevents any actions from proceeding against property of the estate until such

property is no longer property of the estate.[10] § 362(c)(1).  Plaintiffs have enjoyed the benefit of

the automatic stay since the inception of this bankruptcy case.

     Plaintiffs' claim for declaratory relief, on the other hand, seeks a determination of the

validity and extent of Defendant's lien, or an accounting of the arrearage, and the ability to

enforce the lien through foreclosure.  Such issues regarding foreclosure are generally state law

claims.  As this Court has recognized in the context of relief from the automatic stay:

> If chapter 7 debtors have issues with a creditor's assertion of the amount in default ("we have made all or some of the allegedly missed payments"), or with the creditor's waiver or limitation of foreclosure rights ("we received or are negotiating a forbearance agreement"), the debtor's defenses are assertable in state court or processes after stay relief.

*In re Polla*, 2015 WL 3745294, at *2.

     Moreover, in a different context, this Court in *In re Steinhaus* noted that:

> an order "authorizing" foreclosure would appear to place this Court in the stead of the state court which, following stay termination and effective abandonment of the collateral under § 521(a)(6), will be the forum to decide the propriety of "action[s] as to such property as [are] permitted by applicable nonbankruptcy law." This Court has no reason to usurp the role or prerogatives of the state court in such matters.

---

[10] While a discharge terminates the automatic stay under § 362(c)(2)(C), it only does so as to the Debtor, not property of the estate. Further, even after a debtor receives a discharge and the automatic stay is terminated as to him, § 524(a) protects him from personal liability.  *In re Polla*, 2015 WL 3745294, at *2 n.4 (Bankr. D. Idaho 2015).

MEMORANDUM DECISION - 12

*In re Steinhaus*, 349 B.R. 694, 709 (Bankr. D. Idaho 2006).  Such an order authorizing a creditor's foreclosure "would be a gratuitous semaphore to the Idaho state court . . . ." *Id.*

While not addressing a real property dispute, the sentiments in *In re Steinhaus* still ring true.  The automatic stay prevents any foreclosure from taking place during the bankruptcy, absent termination or relief from the stay, and the secured creditor's rights following its termination, whether from relief from the stay or by natural operation of § 362(c)(2), pass through and become actionable through the applicable nonbankruptcy law.  Thus, Plaintiffs' primary request for declaratory relief as to the correct arrearage amount and the Defendant's lien enforcement rights ultimately stem from state law issues irrespective of this bankruptcy.  Intertwined with this requested relief is Plaintiffs' breach of contract claim under the Deed of Trust, which clearly involves state law.

The only claim that does not arise from state law is the alleged RESPA violation.  However, such federal jurisdiction is not exclusive, as state courts share concurrent jurisdiction over such claims.  *See Plascencia v. BNC Mortgage, Inc. (In re Plascencia)*, 2012 WL 2161412, at *14 (Bankr. N.D. Cal. June 12, 2012) (noting that state courts have "concurrent jurisdiction" over RESPA claims); 12 U.S.C. § 2614 (stating that any action under section 2605, 2607, or 2608 "may be brought in the United States district court or in any other court of competent jurisdiction").

Despite the RESPA claim and other issues arising under the guise of bankruptcy law, state law predominates.  Thus, this factor weighs in favor of abstention.

### 3.  The difficulty or unsettled nature of the applicable law

Abstention is favored where the applicable state law is unsettled or complex.  *See Eastport Estates v. City of Los Angeles (In re Eastport Associates)*, 935 F.2d 1071, 1078 (9th

MEMORANDUM DECISION - 13

Cir. 1991) (finding that this factor weighed in favor of abstention where the state law involved was considered relatively difficult and unsettled).  Because the accounting accuracy and foreclosure issues raised by Plaintiffs are typical state court issues, they do not require the specialty of the Bankruptcy Court, despite Plaintiffs' assertions otherwise.  As a result, this factor is neutral.  *See Moore v. Hatfield (In re Hatfield)*, 2009 WL 2849538, at *1 (Bankr. N.D. Cal. July 17, 2009) (finding that this factor was neutral where the state law claims of conversion and abuse of process were not unsettled or unusually difficult).

### 4. The presence of a related proceeding commenced in state court or other nonbankruptcy court

"[U]nlike mandatory discretion under [28 U.S.C.] § 1334(c)(2), discretionary abstention under [28 U.S.C.] § 1334(c)(1) does not require that there be a parallel proceeding in state court."  *Turturici v. National Mortg. Serv., LP (In re Turturici)*, 2010 WL 9477615, at *2 (Bankr. E.D. Cal. Oct. 4, 2010).  Instead, a decision to exercise discretionary abstention requires the balancing of competing factors, only one of which is the pendency of a state court proceeding.  *In re Eastport Assocs.,* 935 F.2d 1071, 1078-79; *Vitamins Online, Inc. v. HeartWise, Inc. (In re HeartWise, Inc.)*, 2022 WL 17178503, at *6 (9th Cir. BAP Nov. 23, 2022)*; Moore v. Hatfield (In re Hatfield)*, 2009 WL 2849538, at * 2 (Bankr. N.D. Cal. July 17, 2009).  In fact, where there was no pending state court action, "the Ninth Circuit treated that fact merely as a consideration weighting against abstention, and not as a bar against abstention."  *In re HeartWise, Inc.*, 2022 WL 17178503, at *6 (quoting *In re Hatfield*, 2009 WL 2849538, at * 2 (citing *In re Eastport Associates,* 935 F.2d 1071 (9th Cir. 1991))).  Thus, in this case, the fact that there is, to this Court's knowledge, no state court action currently pending between Plaintiffs and Defendant is merely one factor weighing against abstention.

### 5. The jurisdictional basis, if any, other than 28 U.S.C. § 1334

MEMORANDUM DECISION - 14

The only other jurisdictional basis for Plaintiffs' claims come from federal question jurisdiction, but only as to their claim under RESPA.   As such, the Court deems this factor as neutral.

### 6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case

Under 28 U.S.C. § 1334, a proceeding is "related to" the bankruptcy where the outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (agreeing with the Third Circuit's view in *Pacor* that Congress intended to grant bankruptcy courts with "comprehensive jurisdiction" to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate" but also agreeing that such jurisdiction cannot be limitless (quotations omitted)).  This includes where the "outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Fietz*, 852 F.2d at 457 (quoting *Pacor*, 743 F.2d at 994).  While, as noted by Plaintiffs, this is a fairly broad standard, "[t]he jurisdiction of bankruptcy courts may extend more broadly in the former [chapter 11 reorganization] case than in the latter [a liquidation under chapter 7]." *Celotex Corp. v. Edwards*, 514 U.S. at 310.

Plaintiffs contend that this proceeding is central to the main bankruptcy case because it affects the treatment of Defendant's secured interest and clearly fits within the conceivable effect standard.  Doc. No. 12 at ¶ 12.  While the outcome could conceivably have an effect in the bankruptcy generally, under the facts presented and as already discussed, such effect is unlikely. The proceeding is "related to" the main bankruptcy, but such relatedness is remote.  Therefore, this factor weighs in favor of abstention.

MEMORANDUM DECISION - 15

### 7.   The substance rather than form of an asserted "core" proceeding

A determination whether this proceeding is core or noncore is relevant to this factor. *Bowen Corp., Inc. v. Security Pac. Bank Idaho, F.S.B.,* 150 B.R. 777, 784 (Bankr. D. Idaho 1993).  Section 157(b)(2) of Title 28 non-exhaustively enumerates proceedings that are considered "core." *See* 28 U.S.C. § 157(b)(2)(A)-(P).  Generally, "a core proceeding is one that 'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'"  *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1131 (9th Cir. 2010) (quoting *Gruntz v. County of L.A. (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000)); *see also Stern v. Marshall*, 564 U.S. 462, 476–77 (2011) (stating that "core proceedings are those that arise in a bankruptcy case or under Title 11.").  Thus, proceedings "arising under" or "arising in" Title 11 are core.  *In re Rtech Fabrications, LLC.,* 635 B.R. 559, 567 (Bankr. D. Idaho 2021).  A matter "arises under" Title 11 if it "involves a cause of action created or determined by a statutory provision of the Bankruptcy Code" while a matter "arises in" Title 11 "if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code."  *In re Ray*, 624 F.3d at 1125-31; *In re Rtech Fabrications, LLC.,* 635 B.R. at 567.

On the other hand, non-core proceedings are not explicitly defined.  The Ninth Circuit has held that proceedings are considered non-core "if they do not depend on the Bankruptcy Code for their existence and they could proceed in another court."  *In re Ray*, 624 F.3d at 1131 (quoting *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004)).

Plaintiffs seek declaratory relief to determine the validity or extent of Defendant's prepetition lien, given the alleged accounting errors, and whether the Defendant may enforce its

MEMORANDUM DECISION - 16

lien through foreclosure. In doing so, the Plaintiffs assert that this is a core proceeding or at a minimum closely related to bankruptcy proceedings because it is a dispute affecting the allowance and enforcement of claims. Doc. No. 12 at ¶ 12 (citing *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431 (9th Cir. 1995)).[11] However, "[o]ften a proceeding, cast in the language of a core proceeding, merely shrouds state law actions under the guise of a bankruptcy issue." *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 427 (Bankr. S.D. Tex 1987). This is the case here. Despite arguably fitting into the literal wording of the enumerated core proceedings in 28 U.S.C. § 157(b)(2)(A) and (O), declaratory actions such as these "can and do exist outside the bankruptcy court." *Maxwell v. HSBC Mortg. Corp. (In re Maxwell)*, 2012 WL 3678609, at *2 (Bankr. N.D. Ga. Aug. 22, 2012). Considering the nature of the claims, ultimately based on discrepancies in accounting that occurred prior to this bankruptcy under a prepetition contract, which could be brought in another court, this proceeding is a non-core matter. But whether classified as core or non-core, 28 U.S.C. § 1334(c)(1) and the *Tucson Estates* factors nevertheless allow courts to exercise their discretion to abstain from adjudicating those claims. *Pineda v. Bank of Am., N.A. (In re Pineda)*, 2013 WL 1749554, at *13 (9th Cir. BAP Apr. 23, 2013).

While the determination of lien validity under 28 U.S.C. § 157(b)(2)(K) sought by Plaintiffs nominally qualifies as a core proceeding, its substance here has no effect on the bankruptcy estate. Thus, this factor favors abstention. *See In re Pineda*, 2013 WL 1749554, at

---

[11] Plaintiffs also cited this case during the May 20, 2026, arguing the case confirms that matters concerning property of the estate are core under 28 U.S.C. § 157(b)(2) when the lender's conduct is inextricably intertwined with the sale or administration of the property. In *In re Harris Pine,* the plaintiffs' (purchasers of the debtor company) state law claims were in fact core because they were asserted against the bankruptcy *trustee* for his conduct connected to the trustee's sale of property of the chapter 11 bankruptcy estate. *In re Harris Pine Mills*, 44 F.3d at 1438. Clearly, the facts of that case are distinguishable from those presented in the case at bar.

MEMORANDUM DECISION - 17

*13 (finding that abstention was warranted under this factor because there was no substance to plaintiff-debtor's lien validity "core" claim where the adversary proceeding would have no impact on the bankruptcy case or estate because the case was essentially complete).

**8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court**

The premise of nearly all the claims in this adversary proceeding stem from state law. Therefore, any severance of claims is feasible, and any judgment entered in state court regarding these matters may be enforced in bankruptcy court, to the extent necessary. This factor favors abstention.

**9. The burden of [the bankruptcy court's] docket**

As with any court's docket, the Court sees a fluctuation of cases and matters. This factor is neutral.

**10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties**

This factor seeks "to protect both the state and federal court systems from the illegitimate gamesmanship involved in forum shopping." *In re Republic Readers Serv., Inc.*, 81 B.R. at 428. Defendant asserts that Plaintiffs may have filed their adversary complaint to stall the discharge and closing of their underlying bankruptcy case as evidenced by their Motion to Defer Discharge. Doc. No. 15 at ¶ 10. Plaintiffs, on the other hand, contend that they filed this matter in accordance with the requirement that injunctions and related relief be pursued by an adversary proceeding and that the issue of the Defendant's asserted arrearage is central to the bankruptcy case and would otherwise delay the case if pursued in another forum. Doc. No. 12 at ¶¶ 29, 30.

MEMORANDUM DECISION - 18

While Plaintiffs may have pursued this bankruptcy in part to prevent foreclosure of their residence, they do not appear to be engaged in abusive forum shopping as contemplated by this factor.[12]  This factor is neutral.

### 11. The existence of a right to a jury trial

Neither party has asserted the right to a jury trial.  This factor is neutral.

### 12. The presence in the proceeding of nondebtor parties

This factor weighs neutral in the analysis of whether this Court should abstain.  "With the rare exception of actions by and between only debtors in the same case, every bankruptcy proceeding necessarily involves one or more nondebtor parties."  *In re Hiefield*, 671 B.R. 80, 92 (Bankr. D. Or. 2025).  It is unusual for an action to only involve debtors, therefore, with the presence of debtors and nondebtors in this case, this factor is neutral.  *See In re SCS Logistics, Inc.*, 671 B.R. at 242; *In re Hiefield*, 671 B.R. at 91.

In considering all twelve of the *Tucson Estates* factors, "one should not be beguiled into a false sense that a head count will yield the answer with mathematical certainty."  *In re Heartwise*, 2022 WL 17178503, at *6 (quoting *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 928 (Bankr. E.D. Cal. 1995)).  Instead, it is a balancing of competing factors.  Here, factors 1, 2, 6, 7, and 8 favor abstention; factors 3, 5, 9, 10, 11, and 12 are neutral; and factor 4 weighs against abstention.  Upon consideration of these factors, the balance favors abstention.  While undertaking this analysis, the Court considered all the cases cited by Plaintiffs

---

[12] The Court acknowledges Plaintiffs' concerns regarding Defendant's inaccurate mention of a previously filed bankruptcy case in its Motion, which was subsequently corrected by its amended Motion. However, the Court disagrees with Plaintiffs' assertion that this error, despite its correction, served as the basis of Defendant's argument.  Nevertheless, the Court did not consider any such argument in its analysis of this factor.

MEMORANDUM DECISION - 19

at the May 20, 2026, hearing.[13]  However, many of these cases do not support the proposition for which they were cited or are inapplicable based upon the specific circumstances of this case. Most notably, the majority of these cases were not chapter 7 bankruptcies, which as discussed above, often changes the applicability of these issues to the bankruptcy estate.[14]

Additionally, the Court notes that this decision in no way forces the Plaintiffs' out of their bankruptcy.  All the rights afforded to debtors and inherent within the main bankruptcy case remain intact, including the right to a fresh start.  The Court is merely declining to exercise jurisdiction over a matter that does not have an effect on the administration of the chapter 7 bankruptcy estate.

### VI. CONCLUSION

For the reasons set forth above, the Motion for Discretionary Abstention is granted, and the Court will abstain.  Given this decision, the Defendant's alternative argument seeking dismissal of this case under Civil Rule 8 will not be addressed and is deemed moot.

---

[13] This includes *Neria v. Wells Fargo (In re Neria),* 2022 WL 17254478 (Bankr. N.D. Tex. Nov. 28, 2022), *Wellness Int'l Network, LTD. v. Sharif*, 575 U.S. 665 (2015), *Thrash v. Ocwen Loan Servicing, LLC (In re Thrash),* 433 B.R. 585 (Bankr. N.D. Tex. 2010), *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431 (9th Cir. 1995), and *Johnson v. Home State Bank*, 501 U.S. 78 (1991).

[14] For example, while *In re Thrash* factually involves many of the same alleged issues as in this case, it is distinguishable because it was a chapter 13 case where the defendant had filed a proof of claim, and plaintiffs properly objected to that claim.  *In re Thrash*, 433 B.R. at 590.  Similar facts are not found in the present case.

MEMORANDUM DECISION - 20

Moreover, because the Motion for Discretionary Abstention is granted, this adversary proceeding will be dismissed, and Plaintiffs' Motion for Injunctive Relief is deemed moot.

A separate order will be entered.

DATED: May 26, 2026

Brent R. Wilson
U.S. Bankruptcy Judge

MEMORANDUM DECISION - 21